UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LORA C.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-04665-JMS-TAB |
| | ) | |
| ANDREW M. SAUL, Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

In May 2016, Lora C. protectively filed for disability insurance benefits ("DIB") and

supplemental security income ("SSI") from the Social Security Administration ("SSA"), alleging

a disability onset date of April 5, 2016.  [Filing No. 8-5 at 2-17.]  Her applications were denied

initially on July 12, 2016 and upon reconsideration on January 13, 2017.  [Filing No. 8-3; Filing

No. 8-4 at 2-6; Filing No. 8-4 at 10-12.]  A hearing was held before Administrative Law Judge

("ALJ") Belinda J. Brown on October 30, 2018.  [Filing No. 8-2 at 41-71.]  The ALJ issued a

decision on November 26, 2018, concluding that Lora C. was not entitled to benefits.  [Filing

No. 8-2 at 11-21.]  The Appeals Council denied review on October 1, 2019.  [Filing No. 8-2 at 2-

4.]  On November 25, 2019, Lora C. timely filed this civil action asking the Court to review the

denial of benefits according to 42 U.S.C. § 405(g).  [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.  Furthermore, although the record reflects that Lora C. has previously used different last names, the last initial "C." will be used in this Entry, consistent with the name used by the parties in this matter.

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).[2]

"If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step

---

[2] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in most respects relevant to this case. For the sake of simplicity, this Entry generally contains citations to DIB sections only.

four is satisfied, the burden shifts to the [Commissioner] to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). However, courts have the statutory power to affirm, reverse, or modify the SSA's decision, with or without remanding the case for further proceedings, and this power includes the ability to remand the case with instructions for the Commissioner to calculate and award benefits to the applicant. *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). "An award of benefits is appropriate, however, only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.*

**II.**

**BACKGROUND**

Lora C. was 53 years of age on her alleged onset date.  [*See* Filing No. 8-5 at 2.]  In connection with her applications for benefits and during her testimony before the ALJ, Lora C. reported the following conditions: chronic lumbar spinal stenosis/sciatica, ureteropelvic junction obstruction/hydronephrosis in the kidneys, chronic major depressive disorder, chronic attention deficit disorder ("ADD"), attention deficit hyperactivity disorder ("ADHD"), anxiety, post-traumatic stress disorder ("PTSD"), carpal tunnel syndrome, primary insomnia, chronic acute costochondritis, chronic gastroesophageal reflux disease ("GERD"), chronic anemia, edema, and vitamin D deficiency.  [Filing No. 8-2 at 47-52; Filing No. 8-6 at 3.][3]  Lora C. has an eleventh-grade education and previously worked as a secretary.  [Filing No. 8-2 at 45-46; Filing No. 8-6 at 4; Filing No. 8-6 at 16.]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Lora C. was not disabled.  [Filing No. 8-2 at 11-21]  Specifically, the ALJ found as follows:

- Lora C. meets the insured status requirements of the Social Security Act through June 30, 2022.  [Filing No. 8-2 at 13.]

- At Step One, she had not engaged in substantial gainful activity[4] since April 5, 2016, the alleged onset date.  [Filing No. 8-2 at 14.]

- At Step Two, Lora C. had one severe impairment: "[d]egenerative changes of the cervical and lumbar spine."  [Filing No. 8-2 at 14.]  Her obesity and GERD constituted non-severe impairments, "as they have not individually, or in combination with other impairments, caused more than minimal work-

_____

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here.  Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

related difficulties for a continuous period of at least 12 months." [Filing No. 8-2 at 14.]  Lora C.'s mental impairments—depression, anxiety, and PTSD— were deemed non-severe because they caused no more than mild limitation in any of the four broad areas of mental functioning set out in the regulations. [Filing No. 8-2 at 14-16 (citing 20 C.F.R., Part 404, Subpart P, Appendix 1).]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 8-2 at 16.]

- After Step Three but before Step Four, Lora C. had the RFC "to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except: The claimant can lift, carry, push, or pull up to fifty pounds occasionally and up to twenty-five pounds frequently.  She can occasionally climb ramps and stairs as well as ladders, ropes, and scaffolds.  She can occasionally balance, stoop, kneel, crouch, or crawl." [Filing No. 8-2 at 16.]

- At Step Four, Lora C. was capable of performing her past relevant work as a secretary, both as it was actually performed by her and as it is generally performed.  [Filing No. 8-2 at 20.]

### III.
### DISCUSSION

Lora C. raises three challenges to the ALJ's decision, arguing that: (1) the ALJ erred in concluding at Step Two that her mental impairments of depression, anxiety, and PTSD are non-severe, and further erred in failing to consider the limiting effects of those impairments throughout the remainder of the disability analysis; (2) the ALJ failed to comply with Social Security Ruling ("SSR") 16-3p in evaluating her subjective statements regarding her symptoms; and (3) the ALJ's RFC determination did not account for all of the limitations supported by medical evidence, and the hypothetical question posed to the vocational expert ("VE") was therefore flawed and cannot support the ALJ's finding that she is not disabled.  [Filing No. 10 at 4-5.]  The Court will address each of these arguments in turn.

5

### A. Whether the ALJ Erred at Step Two or Otherwise Failed to Adequately Consider Lora C.'s Mental Impairments

Lora C. argues that the ALJ's determination that her mental impairments—depression, anxiety, and PTSD—are non-severe is not supported by substantial evidence.  [Filing No. 10 at 22.]  She asserts that the ALJ did not properly consider hundreds of pages of mental health treatment and therapy records and instead "only summarized a scant few" of the medical reports in analyzing the Paragraph B criteria of the mental health listings.  [Filing No. 10 at 23.] Specifically, Lora C. points to treatment records from Dr. Bain, Lora C.'s family medicine physician, and a therapist, Terry Anthony, arguing that these records were ignored without explanation.  [Filing No. 10 at 24-26.]  Lora C. further argues that the ALJ's consideration of her mental impairments was "severely cut short" because they were not mentioned at all after Step Two, and remand is necessary "for full consideration of the evidence under the entire 5-step process."  [Filing No. 10 at 22-23.]  She contends that the ALJ provided "absolutely no discussion" as to how her mental impairments affect her ability to work, "nor how the assigned RFC has taken them into consideration other than dismissing them as non-severe."  [Filing No. 10 at 26.]  Lora C. argues that the ALJ "failed to account for [her] severe depression, anxiety, PTSD, and ADD in terms of the impact they have on her ability to work."  [Filing No. 10 at 27.]

The Commissioner responds that, "[b]ecause the ALJ in this case proceeded through step four of the sequential evaluation process, [Lora C.] cannot base any argument for reversible error on the ALJ's failure to find her mental impairments severe at step two."  [Filing No. 11 at 7.] The Commissioner argues that, regardless, Lora C. does not point to any evidence showing that her mental impairments are severe, the ALJ is not required to address every piece of evidence presented, and substantial evidence supports the ALJ's analysis, including the results of the June 2016 consultative exam by Dr. Floyd Robison, the results of the October 2016 consultative

psychological examination by Dr. Paul Schneider, and the October 2016 findings by state agency reviewing psychological consultant Dr. William Shipley.  [Filing No. 11 at 7-9.]   The Commissioner argues that because Lora C. does not make any specific argument concerning the ALJ's evaluation of these medical opinions, she has waived any challenge to the "great weight" that the ALJ afforded them.  [Filing No. 11 at 9-10.]  The Commissioner contends that the ALJ "clearly relied on medical source evidence" in concluding that Lora C.'s mental impairments were not severe, and that Lora C. has not pointed to any medical source who found that her mental impairments caused work-related limitations.  [Filing No. 11 at 9-10.]

In reply, Lora C. asserts that the Commissioner's "post hoc justifications cannot make up for the ALJ's failure to articulate, explain, or grapple with the evidence."  [Filing No. 12 at 1.] She argues that the ALJ's decision and the Commissioner's arguments were entirely based on the findings of consultative examiners and record reviewing sources, which were made prior to her intensive mental health treatment, and no expert was afforded the opportunity to opine on the later psychiatric evidence.  [Filing No. 12 at 2.]  Lora C. contends that the ALJ was required to consider all of the psychiatric evidence, even the treatment notes that were based on her own account of her symptoms, and that the ALJ "ignored all of [her] personal and extensive mental health treatment that occurred after those one-time examining and non-treating doctors gave their opinions."  [Filing No. 12 at 2.]  Lora C. argues that, even though no medical source has found that her mental impairments caused work-related limitations, the ALJ was still required to consider those impairments, which the ALJ did not adequately do.  [Filing No. 12 at 3-4.]

As long as the ALJ determines at Step Two that at least one severe impairment exists, the ALJ will proceed to the remainder of the sequential analysis, which requires the ALJ to consider all severe and non-severe impairments.  *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010);

*see also Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." (citations omitted)).  In other words, a determination of severity at Step Two is "merely a threshold requirement," and as long as at least one severe impairment is present, the conclusion that other impairments are non-severe "is of no consequence with respect to the outcome of the case." *Castile*, 617 F.3d at 927.

Here, the ALJ found that Lora C.'s depression, anxiety, and PTSD, when considered singly and in combination, did not "cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere."[5]  [Filing No. 8-2 at 14.]  In doing so, the ALJ addressed the four Paragraph B criteria, relying on a June 2016 consultative examination with Dr. Robison, the October 2016 consultative examination with Dr. Schneider, and the function reports she completed with her applications.  [Filing No. 8-2 at 15.]  These cited records included, among other things, notes indicating that Lora C. had mild difficulty with maintaining concentration, persistence, and pace.  [Filing No. 8-2 at 15.]

Dr. Robison's report noted that Lora C.'s thought form was unremarkable, her thought content included morbid thoughts, worthless thoughts, helplessness, and hopelessness, and her affect was blunted and tearful with good eye contact.  [Filing No. 8-8 at 8-9.]  Lora C. reported the following symptoms: depressed mood, hopelessness, morbidity, difficulty concentrating, easily distracted, hypervigilance, indecisiveness, problems falling asleep, problems remaining asleep, frequent tearfulness, helplessness, worthlessness, forgetfulness, confusion or trouble

---

[5] Although the ALJ did not specifically list ADD or ADHD as one of Lora C.'s mental impairments, Lora C. does not explicitly argue that this omission constituted an error.  [*See* Filing No. 10 at 22-27.]  Regardless, the ALJ considered medical records listing ADHD and addressing related symptoms, noted later in the decision that Lora C. reported difficulties resulting from ADHD, and addressed those difficulties in determining her RFC.  Accordingly, failure to include ADHD in the enumerated list of impairments was not fatal.

thinking clearly, unplanned weight changes, a high level of unfocused activity, and social withdrawal.  [Filing No. 8-8 at 10.]  The report also summarized Lora C.'s reported daily activities including house cleaning, making appointments, and paying bills, noting that she reported poor pace of work and persistence relating to her performance of tasks in the home and community.  [Filing No. 8-8 at 15-18.]  As reasons for poor pace and persistence, Lora C. cited her physical limitations, poor memory, mood disturbances, and poor concentration.  [Filing No. 8-8 at 18.]  Dr. Robison listed the primary diagnosis of persistent depressive disorder and secondary diagnoses of chronic PTSD and "Other Specified ADHD (Adult Residual Type)." [Filing No. 8-8 at 20.]  Notwithstanding these diagnoses, Dr. Robison opined that Lora C. was fully capable in the following areas: following simple instructions, making simple decisions, performing personal hygiene tasks at an age-appropriate quality level, performing community tasks at an age-appropriate quality level, carrying out financial transactions unassisted, making financial decisions, and setting up, organizing, and managing her day without assistance or supervision.  [Filing No. 8-8 at 20-22.]  Dr. Robison opined that Lora C. was generally capable in the following areas: following complex instructions, making complex decisions, performing routine household tasks at an age-appropriate quality level, managing conflicts properly, responding properly to supervisor feedback, and speaking and behaving in ways that do not disrupt others.  [Filing No. 8-8 at 21-22.]  Dr. Robison also determined that Lora C. was less than adequately competent in the area of forming and maintaining age-appropriate relationships. [Filing No. 8-8 at 21.]

Dr. Schneider's report noted that Lora C.'s concentration "appeared mildly impaired," her affect was "reasonably well modulated," and her mood was "mildly dysphoric."  [Filing No. 8-8 at 44-45.]  When asked about the main factor limiting her ability to work, Lora C. stated that she

could not focus at work, that she got written up for lack of focus, and that she had difficulty remembering and following instructions. [Filing No. 8-8 at 45.] Dr. Schneider opined that Lora C. met the diagnostic criteria for major depressive disorder and he "would term the current severity mild." [Filing No. 8-8 at 45.]

The Court concludes that these reports constitute substantial evidence supporting the ALJ's decision that Lora C.'s mental impairments were non-severe. Even if the ALJ had erred in this determination, however, that would not be a sufficient basis for remand, given that the ALJ continued past Step Two of the sequential analysis and considered Lora C.'s mental impairments at later steps. *See Castile*, 617 F.3d at 927.

To the extent that Lora C. argues that the ALJ failed to consider her mental impairments in determining her RFC, this argument is a misreading of the decision. The ALJ noted that the RFC determination "reflects the degree of limitation" found with respect to the Paragraph B criteria of the mental function analysis. [Filing No. 8-2 at 16.] In the RFC analysis, the ALJ expressly referenced Lora C.'s mental impairments, including depression, anxiety, and ADHD, and her asserted problems with focusing, concentrating, and being around a crowd of people. [Filing No. 8-2 at 16.] The ALJ also gave great weight to the opinions of Dr. Robison and Dr. Schneider, who considered Lora C.'s mental impairments. [Filing No. 8-2 at 20.]

Lora C. also asserts that the ALJ erred in failing to discuss certain medical evidence. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding. But an ALJ need not mention every piece of evidence, so long [as s]he builds a logical bridge from the evidence to [her] conclusion." *Denton*, 596 F.3d at 425 (citations omitted). Here, it is true that the ALJ did not summarize or discuss all of the records related to Lora C.'s

mental health treatment, but it is not true that this amounted to ignoring evidence that would support a finding of disability. Rather, the records that were not discussed contained substantially the same information as those upon which the ALJ relied.

Specifically, Lora C. points to: (1) an April 2016 visit with Dr. Bain, in which Lora C. was treated for chronic major depressive disorder with ongoing trouble focusing and more frequent crying, ADD, and insomnia, and during which she reported having trouble at work with her ongoing difficulties with focus, [Filing No. 10 at 24 (citing Filing No. 8-7 at 33-35)]; (2) Dr. Robison's consultative examination report, which noted diagnoses of persistent depressive disorder, chronic PTSD, and ADHD, [Filing No. 10 at 24 (citing Filing No. 8-8 at 20)]; and (3) Dr. Schneider's note that her concentration "appeared mildly impaired," [Filing No. 10 at 24 (citing Filing No. 8-8 at 44)]. In addition, Lora C. points to 2017 treatment records from her visits with Ms. Anthony, who treated her for ADHD, depression, and anxiety, and noted that Lora C. reported that she: fails to give close attention to details and makes careless mistakes in work or other activities; does not seem to listen when spoken to directly; has difficulty organizing tasks and activities; fails to follow through on instructions or finish schoolwork, chores, or duties in the workplace; loses things; is easily distracted by extraneous stimuli; is often forgetful; and avoids engaging in tasks that require sustained attention. [Filing No. 10 at 24 (citing Filing No. 8-11 at 3-4).] Lora C. also reported to Ms. Anthony that she had a history of depression that waxed and waned but was overall worse than it had previously been, with symptoms including depressed mood, insomnia, feelings of worthlessness and guilt, difficulty concentrating, hopelessness, impaired memory, and panic attacks. [Filing No. 10 at 24 (citing Filing No. 8-11 at 4).] In addition, Lora C. reported worsening anxiety with symptoms including feeling tense and shaky or edgy, muscle tension, tiredness, difficulty resting or falling asleep,

irritability, worrying about small details of the day, anticipatory anxiety, time anxiety, worrying about things out of her control, and worrying that someone will be harmed or that bad things will happen.  [Filing No. 10 at 24-25 (citing Filing No. 8-11 at 4).]  Lora C. also reported PTSD symptoms including nightmares, flashbacks, depressed mood, feelings of worthlessness or guilt, hopelessness, impaired memory, panic attacks, insomnia, loss of energy, and fatigue.  [Filing No. 10 at 25 (citing Filing No. 8-11 at 4).]  Finally, Lora C. points to treatment records stating that: she often presented with blunted, anxious, or tense affect; on one occasion she was noted to have poor insight, judgment, and concentration; and her symptoms sometimes stabilized but sometimes worsened.  [Filing No. 10 at 25.]

While a more complete analysis could have outlined all of the medical records, including those to which Lora C. points, the ALJ was not required to address every piece of evidence in the record.  Notably, while Lora C. points to Dr. Robison's and Dr. Schneider's opinions, both of those opinions were explicitly discussed in the ALJ's decision.  As to the records that were not discussed in the ALJ's decision, Lora C. does not explain how her cited evidence undermines the ALJ's ultimate conclusion or contradicts the evidence actually relied upon in the decision, rather than being merely duplicative of the relied-upon evidence concerning her diagnoses and symptoms.  Lora C.'s cited records primarily recount her diagnosed medical impairments and their associated symptoms, all of which were accounted for in the cited medical records and in Lora C.'s hearing testimony.  Lora C. does not explain how referencing these additional records would have meaningfully altered the ALJ's analysis.  *See Williams v. Astrue*, 2012 WL 845590, at *5 (S.D. Ind. Mar. 9, 2012) ("It would have been unnecessarily duplicative to restate every diagnosis confirming an ailment the ALJ had already accepted. The ALJ's decision was not in error in this respect.").  This is especially true given that Lora C. does not challenge the great

weight that the ALJ gave to Dr. Robison's opinion, which considered Lora C.'s full list of diagnoses and symptoms—including those in the records allegedly ignored by the ALJ—and indicated that Lora C. was either generally or fully capable of performing a range of tasks. And based on that report along with the other evidence considered, the ALJ found that Lora C.'s mental impairments are not severe and did not incorporate any limitations into the RFC based on these impairments. The Court concludes that the ALJ built a logical bridge between the evidence and her conclusion, and substantial evidence supports the ALJ's determinations regarding Lora C.'s mental impairments.

### B.  Whether the ALJ Failed to Comply With SSR 16-3p

As to this issue, Lora C. states that she "does not deny that the ALJ addressed each regulatory factor of SSR 16-3p in [the] decision," but she maintains that the offered justifications for dismissing the credibility of Lora C.'s testimony regarding her limitations were erroneous. [Filing No. 10 at 30.] For example, she argues, the ALJ relied upon her activities of daily living, but did not explain how these activities support the claim that Lora C. can engage in full-time work at the medium exertion level. [Filing No. 10 at 30-31.] Lora C. also argues that the ALJ ignored objective medical findings that would support her statements as to the location, duration, frequency, and intensity of her pain, while focusing only on the medical findings that supported the decision. [Filing No. 10 at 31-33.] Specifically, Lora C. asserts that the ALJ: (1) did not address all of the facts in Nurse Practitioner Meyer's notes, including that Lora C.'s gait was slow and antalgic and that she had increased pain with extension of the lumbar spine; (2) did not address all of the facts in Dr. Renken's report, including that Lora C. had no reflexes in the bilateral knees and ankles and diminished sensation below the knees; (3) completely ignored Dr. Schmidt's notes revealing pain in the arms and back; and (4) ignored "other objective physical

examinations" that showed pain, diminished sensation, numbness and tingling, and a slightly antalgic gait.  [Filing No. 10 at 31-32.]

In response, the Commissioner characterizes Lora C.'s argument as "conced[ing] that the ALJ addressed each regulatory factor under [SSR] 16-3p in evaluating her subjective symptoms" but "tak[ing] issue with how the ALJ weighed the evidence related to the factors of her daily activities and the location, duration, frequency and intensity of her pain."  [Filing No. 11 at 13.] The Commissioner asserts that Lora C. does not explain how the ALJ placed undue weight on her daily activities, or how the evidence related to her pain demonstrated greater work-related limitations than the ALJ found, and that Lora C.'s arguments "amount to an improper request that this Court reweigh the evidence in a light more favorable to her application for benefits."  [Filing No. 11 at 13-14.]  The Commissioner argues that, although Lora C. asserts that the ALJ cherry-picked evidence, she "provides no proof that the ALJ was picking cherries and ignoring evidence in this case."  [Filing No. 11 at 14 (quoting *Marvious P. v. Saul*, 2019 WL 5328878, at *3 (S.D. Ind. Sept. 30, 2019), *report and recommendation adopted*, 2019 WL 5309411 (S.D. Ind. Oct. 21, 2019)).]  The Commissioner also contends that the medical sources and treatment notes Lora C. points to do not provide any findings regarding work-related functions that undermine the ALJ's RFC finding or otherwise provide a basis for the Court to disturb the ALJ's subjective symptom evaluation.  [Filing No. 11 at 14.]

Lora C.'s reply brief does not specifically address this issue, apart from general arguments that the Commissioner cannot merely provide post hoc justifications for the ALJ's decision and the ALJ may not analyze only favorable evidence while ignoring unfavorable evidence.  [*See* Filing No. 12.]

In SSR 16-3p, the SSA announced that it would no longer assess the "credibility" of a claimant, and instead would focus on determining the "intensity and persistence" of the claimant's symptoms. *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (citing SSR 16-3p). "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole*, 831 F.3d at 412 (emphasis in original).

Analysis of the claimant's symptoms is a two-step process. *SSR 16-3p, 2016 WL 1119029*, *2 (S.S.A. Mar. 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* Second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* In connection with the second step, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

One factor for the ALJ to consider is the claimant's daily activities. *Id.* at *7. However, the ALJ should not place "undue weight" on a claimant's ability to perform daily and household activities. *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (citing *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir.2006)); *see also Brown v. Colvin*, 845 F.3d 247, 253 (7th Cir. 2016) (noting that the Seventh Circuit has "repeatedly cautioned against equating daily living activities with the ability to perform a full day of work"). Furthermore, "'[a]n ALJ cannot disregard a

claimant's limitations in performing' daily activities." *Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016) (quoting *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009)) (alteration in original).

As Lora C. acknowledges, the ALJ recited and followed the two-step process for evaluating the intensity, persistence, and limiting effects of her symptoms established by SSR 16-3p. [*See* Filing No. 8-2 at 17.]  To the extent that Lora C. argues that the ALJ placed undue weight on her daily activities, that argument is without merit.  The ALJ did indeed discuss Lora C.'s daily activities, but the analysis did not stop there: The ALJ went on to discuss medical evidence from multiple medical professionals as well as objective tests, including x-rays and MRIs.  [Filing No. 8-2 at 17-20.]  Lora C. has not explained—and the Court cannot discern—how this discussion of daily activities along with other evidence amounts to placing undue weight on Lora C.'s daily activities.

To the extent that Lora C. asserts that the ALJ impermissibly ignored certain medical evidence in considering her subjective symptoms, her argument is without merit.  Again, the ALJ is not required to recite every piece of evidence in the record and also cannot be required to recite each fact contained within each report that she does discuss.  Lora C.'s arguments as to this issue essentially ask the Court to reweigh the evidence, which the Court cannot do.  *See, e.g., Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (a reviewing court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner").  For example, as to the records from Nurse Practitioner Meyer, the ALJ recounted Lora C.'s reports of pain and noted that Nurse Practitioner Meyer concluded that Lora C. had no neurological or motor strength deficits and no pathological reflexes and should work on increasing her physical activity and losing weight.  [Filing No. 8-2 at 18 (citing Filing No. 8-8 at 49).]  Nothing else in this medical record—including notes that

Lora C. points out, which indicate that her gait was slow and antalgic, that she "does have pain with walking," that she has "[f]ull cervical and lumbar range of motion with pain," or that she had increased pain with extension of the lumbar spine—change the fact that Nurse Practitioner Meyer ultimately concluded that Lora C. did not have motor strength deficits and was capable of increased physical activity.  Similarly, Lora C. takes issue with the ALJ's recitation of records from Dr. Renken, although she does not address the fact that—as the ALJ noted in the decision—after Lora C. visited Dr. Renken with complaints of pain, Dr. Renken referred her to a Dr. Vitto, who treated her with injections and radiofrequency nerve ablations that provided some relief from the pain.  [Filing No. 8-2 at 18-19 (citing Filing No. 8-10).]  The ALJ further noted that after treatment by Dr. Vitto, physical examination of Lora C.'s lumbar spine revealed no tenderness to palpitation and no pain.  [Filing No. 8-2 at 19 (citing Filing No. 8-10 at 7).]  All this is to say that while an ALJ cannot "cherry-pick" only favorable facts, a claimant should not "cherry-pick" only unfavorable facts in asking the Court to reconsider the ALJ's evaluation of the claimant's subjective reports of symptoms.  Here, the ALJ summarized numerous medical records in conjunction with Lora C.'s testimony and her daily activities to conclude that her assertions concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the other evidence.  This constituted a proper application of SSR 16-3p, and the ALJ's ultimate conclusion is supported by substantial record evidence and therefore will not be disturbed.  *See Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) ("So long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong.").

### C.  Whether the RFC Determination or Hypothetical Questions Were Erroneous

Lora C. argues that the "ALJ never explain[ed] the rationale behind" the RFC finding, and the "mandated predicate function-by-function assessment, along with the necessary

reasoning behind such an assessment[,] are missing" from the ALJ's analysis.  [Filing No. 10 at 34.]  Specifically, Lora C. asserts that "[t]here is no explanation how a 53 year old obese female with severe lumbar and cervical spinal stenosis and herniated discs with radiculopathy resulting in numbness and tingling in both the arms and legs with objectively verified reduced strength, reduced range of motion, reduced sensation, reduced reflexes, decreased pinch and grip strength, and slow antalgic gait is capable of standing and walking at least six hours in an eight hour workday and ever lifting and carrying fifty pounds." [Filing No. 10 at 35.]  She contends that the RFC fails to account for her severe back issues and mental impairments, and also "creates limitations not supported by medical evidence." [Filing No. 10 at 36.]  Lora C. further argues that, because the ALJ's hypothetical questions to the VE were based on an RFC that failed to include all of the necessary information and limitations based on the medical evidence, the ALJ's decision based on that questioning cannot stand.  [Filing No. 10 at 35.]

The Commissioner responds that substantial evidence supported the ALJ's RFC finding. [Filing No. 11 at 10-11.]  Specifically, the Commissioner points out that the ALJ discussed treatment notes, including a May 2016 visit with Dr. Bain, an October 2016 visit with Nurse Practitioner Meyer, several 2018 visits with anesthesiologist and pain management physician Dr. Vitto, and various objective MRI and x-ray results. [Filing No. 11 at 11-12.]  The Commissioner also notes that the ALJ gave great weight to the October 2016 consultative examination opinion by Dr. Rathod and the January 2017 opinion of state agency medical consultant Dr. J.V. Corcoran. [Filing No. 11 at 12.]  The Commissioner asserts that Lora C.'s argument that the ALJ did not adequately explain the RFC finding "ring[s] hollow," and she has not presented any reason for the Court to remand for a reassessment of the RFC. [Filing No. 11 at 12.]

Lora C.'s reply brief does not specifically address this issue, apart from general arguments that the Commissioner cannot merely provide post hoc justifications for the ALJ's decision and the ALJ may not analyze only favorable evidence while ignoring unfavorable evidence. [*See* Filing No. 12.] She also recites generally law stating that the ALJ may not merely summarize, but must analyze, the relevant evidence and provide a logical bridge for the evidence to the conclusion regarding the RFC. [Filing No. 12 at 3.]

In addition to discussing the many medical records and objective test results outlined above, the ALJ also gave "great weight" to the opinions of Dr. Corcoran, Dr. Shipley, Dr. Rathod, Dr. Robison, and Dr. Schneider. [Filing No. 8-2 at 20.] Dr. Corcoran reviewed Lora C.'s medical records and opined that she had exertional limitations consistent with performing medium level work, including that she could occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, stand or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and occasionally climb ramps, stairs, ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, or crawl. [Filing No. 8-3 at 22-23.] Dr. Shipley opined that Lora C.'s mental impairments were not severe. [Filing No. 8-3 at 21-22.] Dr. Rathod opined that Lora C. had no physical abnormality, her motor function, gait, posture, muscle strength, and neurological function were normal, and she had the ability to perform activities involving sitting, standing, moving about, and carrying, with no difficulty kneeling, crawling, squatting, climbing ladders or scaffolds, or walking up and down stairs. [Filing No. 8-8 at 40.] As discussed more fully above, Dr. Robison and Dr. Schneider opined that Lora C.'s mental impairments were not severe. [Filing No. 8-8 at 20-22; Filing No. 8-8 at 44-45.]

Lora C. does not argue that the ALJ erred in giving weight to any of these opinions, nor does she point to any specific evidence that would undermine the ALJ's RFC determination.

Instead, she merely asserts that the ALJ did not provide a sufficient explanation of her reasoning. However, given the discussion of all of these opinions, which draw specific conclusions regarding Lora C.'s functional limitations, this argument must be rejected.  The ALJ provided a sufficient articulation of her reasoning, and the RFC determination is supported by substantial evidence.  *See Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) (noting that an ALJ "must provide some glimpse into the reasoning behind her decision" such that a court can conduct an informed review).

As to the hypothetical questions posed to the VE, Lora C. only argues that the hypotheticals were erroneous to the extent that they were based on a flawed RFC.  Having concluded that the RFC determination was not erroneous, there is no basis to conclude that the hypothetical questions were flawed.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent."  *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 271 (7th Cir. 2010). "The Act does not contemplate degrees of disability or allow for an award based on partial disability."  *Id.* (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)).  "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful."  *Williams-Overstreet*, 364 F. App'x at 274.  The Court can find no legal basis presented by Lora C. to reverse the ALJ's decision that she was not disabled.  Therefore, the decision below is **AFFIRMED**.  Final judgment shall issue accordingly.

Date: 7/24/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**